Since everyone is here, we will dispense with the day calendar. Judge Cabranes, who would normally be presiding, was not able to come down, and so you'll have to make do with me. Judge Cabranes is participating by television, and you are here. I am indeed. Thank you. Thank you very much, and thank you for presiding. Good. We'll hear Kennedy v. Forest Products. Good morning. May it please the Court. I'm sorry. This is not working. This has been technical difficulty week, I'll tell you that. Try speaking, and I'll see if it Good morning, Your Honor. Hello. Can you hear us? Judge Calabresi is still having trouble with the headset, Judge Cabranes. Try speaking again. Good morning, Your Honor. I don't know what's wrong, but it's still not Can you hear us? It has to be on loud. Try again. Good morning, Your Honor. Good. Let's start this anew. Thank you. I'm sorry. Thank you, Your Honor. May it please the Court. My name is Michael Spagnola, and I'm pleased to represent the defendant appellant, Supreme Forest Products, whom, throughout my argument, I will refer to as Supreme. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. Your Honors, the principal issue in this case is whether, under Congress's strict actual violation standard for claims under Section 31105A1Bi of the Surface Transportation Assistance Act, judgment as a matter of law should have entered in Supreme's favor when there was no evidence of the route that Plaintiff Appellee Michael Kennedy would have taken the two truckloads in question on April 3, 2014. Mr. Kennedy brought his claim in this case under Section A1B1 of the STAA. The regulation at issue in the case was 23 CFR 658.17, which prescribes the maximum gross vehicle weight on Federal highways. Congress's actual violation standard requires proof that the regulation would have actually been violated by Mr. Kennedy's operation of a commercial motor vehicle. Why wasn't the district court correct in saying that, under the circumstances in Connecticut, it's perfectly clear that that's the way that he would have had to go on a State highway? I mean, Connecticut has only so many highways, and how else are you going to go? Well, Your Honor, as you know, there are, as you pointed out, many roadways in Connecticut. Yes, you can go on dirt roads, but it seems unlikely that a tractor trailer, you know, a truck of that size would possibly go on those, isn't it? Well, Your Honor, there was absolutely no evidence of the highway system in Connecticut introduced at trial. There was no evidence of the history of routes that Mr. Kennedy or other drivers took throughout their employment. And indeed, Your Honor, there was actually a load that Mr. Kennedy took on April 3, 2014, from the precise origin and destination that was at issue with respect to the third load. So clearly there was opportunity for Mr. Kennedy to put forth evidence of the route he would have taken. And I think under Congress's strict actual violation standard, that was required in this case. The inference that he may have driven on a Federal highway is not enough. There needed to be actual evidence of route in the case. Was the jury charged that he had to have driven on a Federal highway? Yes, Your Honor. Was the jury instructed that they had to make a finding to that effect? They had to make a finding of an actual violation of the regulation, Your Honor. And the district court implied, as Judge Calabresi questioned, that there was circumstantial evidence from which one could infer that that would have occurred. You're saying that there's no evidence in the record? Is that it? Yes, Your Honor. There's no evidence of the route that Mr. Kennedy would have taken. And in the absence of that, judgment of a matter of law should have entered into it. Why can't a jury decide that on the basis of what Connecticut is, it was more sufficiently probable that he took a route of that sort? I mean, we do that sort of thing in any number of things. In all of the drug cases in which interstate commerce is proven by the fact that most drugs are taken do come across state line. It isn't clear that the particular one necessarily did, but we allow a jury to make that inference, don't we? Yes, Your Honor. As we pointed out in our briefs, we believe that the standard for proving a jurisdictional nexus is less stringent than what Congress envisioned under the actual violation standard for the SBA. That's interesting. Why should a jurisdictional nexus be less stringent than a question of proof in what is essentially a civil case? One would have thought that jurisdiction is something that one has to establish before one does something else, and more strictly. Well, Your Honor, I believe the decisions that we've cited in our briefs suggest that the burden of proof on the government in proving jurisdiction is minimal. I don't believe, if you look at the language of the statute in the STAA, the congressional purpose of the statute, as well as the second prong of the statute, which we haven't discussed yet, which is a reasonable apprehension prong. Yes, of course. That's the other prong, which has been, but the main basis, you're saying that the main basis in this case was on the first prong, and that's why you're a problem. Yes, Your Honor. The claim was brought under the first prong under the STAA. There was not a claim brought under the second prong of the STAA. The safety prong, yeah. Yes, Your Honor. So, as I was saying, Your Honor, Congress clearly sought to enact a stringent standard when it created the actual violation standard. It is not enough that the regulation might have been violated or may have been violated. Everyone in this case, Your Honors, agrees that travel on a federal highway was an element of Mr. Kennedy's cause of action in this case, and the absence of proof of route, meaning the fact that Mr. Kennedy would have traveled on a federal highway with respect to one or more of the loads on April 3rd, mandates that judgment as a matter of law should have entered in Supreme's favor. So we would respectfully ask this Court to reverse. Was there a motion to dismiss at the close of the plaintiff's case? Yes, there was. And was it on the jurisdictional ground, or on this ground? Yes, Your Honor, it was. All right. I thought there was. I just want to make sure. Okay, thank you. Yes, Your Honor. We moved for judgment as a matter of law at the close of evidence under Rule 50A, and the case was submitted to the jury. Yes, you asked both for that and for a new trial as against the weight of the evidence. Yes, Your Honor. We have an alternative claim as well for a new trial.  We think in the alternative, if this Court is not inclined to reverse the judgment of the district court and answer judgment as a matter of law, we would ask for a new trial.  Thank you, Your Honors. You may proceed, Mr. Riley.  May it please the Court. Your Honor, the primary argument you've heard this morning was that there was no— Do speak right into the microphone. Certainly, Your Honor. The primary argument you've heard this morning is that there was no evidence of the route that Mr. Kennedy would have taken, and specifically that he would have operated his vehicle on the interstate highway system as to either of the loads he refused to operate on the day in question. As an initial matter, as we point out in our brief, geography is a matter that's within the knowledge of the jury and susceptible to judicial notice. And as the Court observed when it upheld the jury's verdict, these jurors were drawn from Central Connecticut, and it would be within their knowledge to conclude that one or both of the vehicles at issue would have been driven on the interstate. Beyond that, Your Honor, there was evidence from which it could be inferred that Mr. Kennedy would have operated his vehicle on the interstate. There were certain statements made by Mr. Kennedy, either in the evidence that was presented at trial or actually in the course of the trial, to the effect that he didn't want to break the law when going down the road. And as we know, the road in question, the road at issue, under the claim that's been brought here and the regulation that's at issue here, 23 CFR 650. That requires us to say that your client knew that the law was limited to Federal Highway, although, as you pointed out, the Connecticut law was similar, and so that statement could actually mean that he didn't want to break the law even on driving on just State highways. It could mean that, Your Honor. I agree. Under the standard at issue here where we have to construe the evidence most favorably to Mr. Kennedy, I believe that, and most favorably to sustaining the verdict, I think it can be inferred that he was actually referring to the interstate highway system. Mr. Kennedy certainly testified that, as a trucker, it was his responsibility to have knowledge of the laws and regulations applicable to trucking, and that was not a fact that was particularly in controversy. Mr. Kennedy even went so far as testifying at trial that he didn't want to break the law, and when asked which law he thought he would be breaking, he replied, the overweight law. And, again, the one that's at issue here is the regulation we've previously cited. Defendant's own general manager, Mr. Paganini, agreed with Mr. Kennedy's assessment that if he had operated his vehicles that day while he was overweight, it would have been in violation of the law. So, in sum, Your Honor, there was a lot of reference to the road and breaking the law at issue by driving on the road, and I think the fair and obvious inference that can be drawn from that is that Mr. Kennedy's intent would have been to drive the vehicle on the interstate highway system. You know, was this really in front of, was this really on everybody's mind while you were trying the case? I think, in a way, Your Honor, it was so obvious that Mr. Kennedy almost didn't think that he needed to say specifically that, yes, my intent was to take Interstate 84 again. Was the jury, the jury did, did the jury have to make special findings with regard to this? They did, Your Honor. There were four interrogatories, two of which specifically referred to operating the vehicle on the interstate highway system as part of the interrogatory, and the jury found in the affirmative in response to overweight. In the defendant's closing, did the defendant point out an absence of proof with regard to that category? The defendant did argue, yes, that that evidence hadn't been submitted. So the jury knew that it had to make a finding, and the defendant had pointed out what it considered to be a paucity of proof in that regard. That's correct, Your Honor, yes. And what was your argument to the jury? Well, the argument, Your Honor, is similar to what I've outlined here today to you, which is that you jurors have knowledge of the roads here in Connecticut. You can infer what the most direct or not even you have knowledge of what the most direct route between Hartford and Southington, for example, is, which is Interstate 84. And, again, you've heard Mr. Kennedy reference to not wanting to drive illegal. Again, the thing that makes driving illegal in this case is taking it on the interstate highway system. So the question is not whether the jury was properly instructed and so on, but whether there was enough so that a jury could find that that was more likely than not what happened. That's where your opponent traverses. They say just there was nothing on which they could find that, make that finding. I believe that is their argument, yes. We view the requirements of even the actual violation of the STAA standard differently, Your Honor. I illustrated some hypotheticals both with respect to the weight law and with respect to other regulations which show that, especially in the case of a refusal to drive, which is necessarily looking prospectively, it may be impossible to show that a particular violation was certain to result because we don't know ultimately what would have happened. The defendant actually cited in its brief a case from the Fourth Circuit, which is Transfleet v. Boone, which I think is illustrative of that standard here. Because in that case, and that concerned admittedly a different regulation, but the one dealing with maximum hours, the driver at the time they refused to drive actually hadn't been over their hours. And the Fourth Circuit said even if the dispatch contemplates an actual violation of a regulation, that's enough and that it strikes us as reasonable that the act was intended to protect drivers from having to begin trips when an employer has exerted pressure to violate the rules at some point. Well, Paganini, who clearly had, there was a lot of evidence about Paganini wanting the trucks to run heavy. Paganini certainly didn't instruct him to stay on local roads, to stay off the interstate once he expressed an objection. No, that's correct, Your Honor. There was testimony that there was no company rule that would have prevented the vehicle from traveling on the interstate with reference to other. Your client's objection was expressed in the context of it being illegal to do so. That is correct, Your Honor, yes. All right. Would you in your remaining minutes address the punitive damages and the multiplier, you know, how many more times of the actual damages? I can, Your Honor, certainly. I'd be happy to. So, Your Honor, when we interpret punitive damages in a case like this, we're guided by the Supreme Court's decision in the BMW case and the subsequent progeny. Of note, I think, with respect to many of those cases, is that they concern review of State court punitive damages awards based on common law principles. And a big part of the rationale that animated the Court's decision there was that this is a constitutional violation because it subjects defendants to unknown and potentially excessive amounts of damages. That's not a situation we have here because the punitive damages were imposed by Congress and capped at $250,000. So defendant knew at the outset exactly what its exposure was here for punitive damages. The actual amount of punitive damages after it was awarded here was the statutory maximum of $250,000, which, if my math is correct, comes out to a 21 to 1 ratio. I understand, of course, that there's some law indicating that typically anything further than a double digit award raises a question, but there's also case law that suggests that each case has to be reviewed on its particular facts. And how do we get to $425,000? That was the jury's. I understand. No, I understand. How do you explain going beyond $250,000? So the jury, Your Honor, was not instructed as to the amount of punitive damages that it could award. It was just instructed that if it found it to be appropriate. They were not told the maximum. That is correct, Your Honor, yes. They were just instructed on punitive damages. Where does that leave us exactly? That is, does that mean that as a practical matter, if you prevail, you only get $250,000? We stipulated in post-trial motions with the trial court that we would accept an award of $250,000 because that was the statutory maximum, Your Honor. Right. Thank you. You're welcome. Part of, I think, the disparity with respect to the party's analysis of the punitive damages here, Your Honor, is what exactly the right, the federally protected right at issue is here. We argue that under the STAA, when read in conjunction with the regulations, confers upon commercial truck drivers a right not to operate their vehicle when doing so would violate a rule standing order, et cetera, of the regulations. By terminating him, there was a violation particularly of that federally protected right. Well, the drivers are the folks who are the closest to the violations. They're oftentimes asked to drive in excess of the hours. Back when I was a young plaintiff's lawyer, we had a multitude of tractor-trailer cases where the drivers had driven 16, 18 hours without any break whatsoever. This law attempts to put some teeth into it and allows the drivers an enforcement mechanism and not suffer the consequences of losing their employment. I agree, Your Honor, and I think Congress made that purpose fairly explicit when enacting the STAA originally. All right. Thank you. Thank you, Your Honor. Thank you. Your Honor, I'd like to take up in rebuttal a couple points made by Attorney Riley. Attorney Riley talked about geography, and geography is not route. There was no evidence introduced in the case about Connecticut's roadway systems. There was no evidence introduced in the case about the distance between the origins of these loads and the destinations of these loads. All that Mr. Kennedy relied on was an impermissible inference by the jury that he must have envisioned or he must have thought that he was going to go on a federal highway. That's not enough, again, under Congress's actual violation standard. And I think it's very important for this Court to keep that standard in mind when passing on whether there was any evidence of an actual violation in this case. With respect to the punitive damages analysis that was broached, we think that the primary problem with both the award itself or the propriety of any award and the district court actually utilized factors that it instructed the jury. The jury was not permitted to consider. There was a very specific instruction given at the request of the defendant regarding character evidence with respect to the loads that were overweight on days other than April 3, 2014. And what the district court instructed the jury was that any evidence of that could not be used for any purpose, and I underscore any, other than to prove that the loads at issue on April 3— So you are more concerned with the availability of punitive damages at all than with the amount that was issued. Were punitive damages to be permitted? Well, I'm certainly concerned about both, Your Honor. In the first instance, we believe that there wasn't sufficient evidence for the jury to return an award of punitive damages based on the lack of evidence, number one, of any knowledge by either Mr. Paganini, Mr. Bellino, or Mr. Boucher, who were sort of the principles of Supreme Court's products at the period in question, that they were violating the Surface Transportation Assistance Act's whistleblower provisions. So the fundamental disagreement that we have with the federally protected right is whether it's the STAA's whistleblower protections or whether it's the weight regulation at issue. We think under Kolstad, the Court can only look at the whistleblower provisions of the STAA. It cannot look at whether the driver had a federally protected right under the regulation. Thank you. Thank you very much, Your Honors. Thank you both. We'll reserve decision.